UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

TODD R. ZAESKE
W67 N864 Washington Avenue
Cedarburg, WI 53012

     Plaintiff,

     v.                                   Case No. 14-C-274

WELLS FARGO ADVISORS, LLC
One North Jefferson Avenue         **JURY TRIAL DEMANDED**
St. Louis, MO 63103

     Defendant.

---

## COMPLAINT

---

NOW COMES the Plaintiff, Todd R. Zaeske, by his counsel HEINS & MINKO LLC, by Attorneys Janet L. Heins, Richard A. Dahl, Erica N. Reib, and Michael J. Gentry, as and for claims against Defendant, and alleges as follows:

### PARTIES

1. Plaintiff, Todd R. Zaeske, is an adult resident of the State of Wisconsin residing at W67 N864 Washington Avenue, Cedarburg, Wisconsin 53012.

2. Defendant, Wells Fargo Advisors, LLC, is a foreign limited liability company with a principal place of business located at One North Jefferson Avenue, St. Louis, Missouri 63103. Defendant is a broker-dealer, registered with the U.S. Securities & Exchange Commission and a member of FINRA. Defendant conducts substantial business in the State of Wisconsin.

## JURISDICTION AND VENUE

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this case involves diverse parties, and 28 U.S.C. § 1367 supplemental jurisdiction.

4. Venue with regard to Plaintiffs' claims is vested in this Court pursuant to 28 U.S.C. § 1391(b), *inter alia*. The unlawful employment practices alleged herein were committed in the Eastern Judicial District of the State of Wisconsin.

## FACTS

5. When recruiting the Plaintiff for hire, the Defendant represented to him that his role would be to manage the substantial existing investment book of business at the Mequon and Shorewood Wells Fargo branches.

6. Defendant also agreed to provide Plaintiff with a transitional bonus of $272,311, payable in 88 equal monthly installments (more than double the industry norm length) while Plaintiff remained employed with Defendant.

7. Plaintiff relied on Defendant's representations and terminated his existing satisfactory employment with Chase Bank to accept employment with Defendant.

8. In accepting employment with Defendant, Plaintiff thereby abandoned the substantial book of business he had developed at Chase, on which he was being paid significant commissions, to pursue what was represented to him as a better opportunity at Defendant.

9. When Plaintiff began working for Defendant as a financial advisor in March 2011, the investment book of business promised to him had vanished with his predecessor in the position.

10. This required Plaintiff to start developing his own customers and book of business from the inception of his employment by Defendant, all while managing two separate branches of Defendant and conducting non-sales office work and management duties.

11. After Plaintiff began working for Defendant and discovered no book of business existed, he requested that Defendant advance the entire transitional bonus to Plaintiff, and then Defendant directed Plaintiff to sign a promissory for the full balance plus interest of the transitional bonus, in effect converting it to a loan payable in full.

12. Defendant compensated Plaintiff on a predominantly commission basis with a small monthly stipend.

13. When he began working for Defendant, Plaintiff discovered that no financial advisors were serving a large part of his area of supervision, and so he was forced to handle those additional, unexpected duties outside of Mequon and Shorewood.

14. This extra, unexpected work left Plaintiff no real opportunity to develop strong relationships within his branches that would result referrals of business to him.

15. Defendant's policies pitted its employees against each other in developing business, thus diminishing his opportunities to develop customers on whom he could earn commissions.

16. Plaintiff's only resource for new clients at Defendant was referrals from bank personnel.

17. However, the bankers were compensated and incentivized by Defendant on a much higher basis to provide a bank solution versus an investment solution.

18. Plaintiff's receipt of referrals from Defendant relied on building solid relationships with the bankers, which was hampered by having to cover multiple branches and

3

engage in unexpected and unrelated management and direct financial advising that were not part of his offer of employment from Defendant.

19. Also, due to Defendant's interpretation of privacy laws, Plaintiff was not allowed to prospect for clients directly out of the bank "book," leaving him solely dependent on referrals.

20. Plaintiff was thus left without income for a significant period of time while he developed customers, and he was forced to use the transitional bonus money to support himself and his family until he could begin earning commissions.

21. In the final days of his employment, Plaintiff was asked to cover just the Mequon branch, where the branch manager, who was in his twenties, knew nothing about investments, didn't want to learn, didn't trust them, and therefore instructed his bankers to not give Plaintiff referrals.

22. Defendant's promissory note for the transitional bonus required that upon termination of his employment, whether voluntary or involuntary, Plaintiff would immediately owe the remaining balance on the note to Defendant with an accelerated interest rate.

23. Plaintiff resigned employment with Defendant on June 5, 2013, because he still was not being paid enough in commissions to financially support himself and his family.

24. Defendant has initiated FINRA arbitration proceedings to recover from Plaintiff the amount due on the promissory note for the transitional bonus.

**FIRST CLAIM FOR RELIEF—PROMISSORY ESTOPPEL**

25. Plaintiff incorporates paragraphs 1-24 of this Complaint by reference.

26. Defendant promised Plaintiff that his role would be to manage the substantial existing investment book of business at the Mequon and Shorewood Wells Fargo branches, and that he would receive a transitional bonus, not a loan, of $272,311; Defendant made these

promises to induce Plaintiff to leave employment to perform services for Defendant's benefit. Plaintiff was induced by Defendant's promises and relied on Defendant's promises to his extreme detriment.

27. As a result of Defendant's actions, Plaintiff has suffered substantial damages in the form of lost future employment opportunities, lost wages and benefits, out-of-pocket job search expenses, attorney fees and costs, and long-term damage to his career and potential lifetime earnings.

**SECOND CLAIM FOR RELIEF—BREACH OF IMPLIED CONTRACT**

28. Plaintiff incorporates paragraphs 1-27 of this Complaint by reference.

29. Defendant's promises to Plaintiff that his role would be to manage the substantial existing investment book of business at the Mequon and Shorewood Wells Fargo branches, and that he would receive a transitional bonus, not a loan, of $272,311, constituted an implied contract.

30. As a result of Defendant's actions, Plaintiff has suffered substantial damages in the form of lost future employment opportunities, lost wages and benefits, out-of-pocket job search expenses, attorney fees and costs, and long-term damage to his career and potential lifetime earnings.

**THIRD CLAIM FOR RELIEF—MISREPRESENTATION**

31. Plaintiff incorporates paragraphs 1-30 of this Complaint by reference.

32. Defendant made material misrepresentations of fact to Plaintiff that his role would be to manage the substantial existing investment book of business at the Mequon and Shorewood

5

Wells Fargo branches, and that he would receive a transitional bonus, not a loan, of $272,311. These misrepresentations were specifically designed to induce Plaintiff to work for Defendant.

33. As a result of Defendant's material misrepresentations, Plaintiff has suffered substantial damages in the form of lost future employment opportunities, lost wages and benefits, out-of-pocket job search expenses, attorney fees and costs, humiliation, emotional distress, and long-term damage to his career and potential lifetime earnings.

### FOURTH CLAIM FOR RELIEF—FALSE ADVERTISING § 103.43(1)

34. Plaintiff incorporates paragraphs 1-33 of this Complaint by reference.

35. Defendant advertised falsely within the meaning of WIS. STAT. § 103.43(1) that Plaintiff's role would be to manage the substantial existing investment book of business at the Mequon and Shorewood Wells Fargo branches, and that he would receive a transitional bonus, not a loan, of $272,311. These false advertisements by Defendant were specifically designed to induce Plaintiff to work for Defendant, and did induce Plaintiff to do so.

36. As a result of Defendant's false advertisements to persuade or engage a worker to change from one place of employment to another, Plaintiff has suffered substantial damages in the form of lost future employment opportunities, lost wages and benefits, out-of-pocket job search expenses, attorney fees and costs, humiliation, emotional distress, and long-term damage to his career and potential lifetime earnings.

**WHEREFORE**, the Plaintiff requests that this Court:

1. Order the consolidation of the FINRA arbitration matter with this lawsuit for just and fair resolution of all claims, both pre- and post-employment, by this Court.

2. Order Defendant to make the Plaintiff whole by paying all incidental and consequential damages, lost wages and benefits, compensatory damages, punitive and/or exemplary damages, all actual damages, and prejudgment and post-judgment interest;

3. Deny Defendant's request to recover Plaintiff's transitional bonus;

4. Order Defendant to pay the reasonable costs and attorney fees incurred by the Plaintiff in bringing this action pursuant to WIS. STAT. § 103.43 and all other applicable provisions; and

5. Whatever other relief is justified and appropriate under the circumstances of this case.

Dated this 12th day of March, 2014.

                HEINS & MINKO LLC
                Counsel for the Plaintiff

                *s/ Janet L. Heins*
                Janet L. Heins, State Bar No. 1000677

HEINS & MINKO LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 fax
e-mail: jheins@heinslawoffice.com

7