UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| TODD R. ZAESKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14 – C – 274 |
| ) | |
| WELLS FARGO ADVISORS, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY PROCEEDINGS AND COMPEL ARBITRATION**

Defendant Wells Fargo Advisors, LLC ("Wells Fargo" or the "Company"), by and through its undersigned attorneys, respectfully submits this Memorandum of Law in Support of its Motion to Stay Proceedings and Compel Arbitration.

## I. PRELIMINARY STATEMENT

Plaintiff filed this lawsuit in violation of his express contractual agreements to arbitrate any and all disputes arising out of his employment with Wells Fargo. Plaintiff signed at least *four separate arbitration agreements* to this effect. Each of those agreements is a valid and enforceable contract, commonly used throughout the financial services industry. The arbitration agreements at issue in this case are broadly-worded and clearly encompass all claims that arise out of or relate to Plaintiff's employment with Wells Fargo. Plaintiff knows full well that his claims can be resolved only through mandatory binding arbitration. Yet, for reasons known only to him, Plaintiff has filed this lawsuit in direct violation of the clear and unambiguous language of the very contracts that form the basis of his lawsuit. Under these circumstances, the FAA and controlling legal precedent require the Court to stay these proceedings and compel Plaintiff to arbitrate his claims before the Financial Industry Regulatory Authority ("FINRA").

Even if the written agreements at issue did not compel arbitration (and they do), Plaintiff would *still* be required to arbitrate. FINRA's Rules apply to all parties in this case: Wells Fargo is a "member" firm, and Plaintiff is an "associated person," as defined by FINRA's Code of Arbitration Procedure. And FINRA Rule 13200(a) expressly mandates that all disputes between or among members and associated persons must be arbitrated before FINRA. Indeed, there is an open and active FINRA arbitration action currently pending between Plaintiff and Wells Fargo.

Plaintiff cannot avoid his contractual and regulatory arbitration obligations, each of which arises out of and relates to his employment with Wells Fargo and the business activities of the Company. The Court should dismiss Plaintiff's complaint for improper venue, or stay this lawsuit until the parties' FINRA arbitration proceeding has concluded.

## II. FACTUAL BACKGROUND

Plaintiff is a licensed financial advisor (CRD# 2764895), duly registered with FINRA. (*See*, Declaration of Kevin Dailey, attached as Exhibit 1, at ¶ 8 and Ex. A).[1] Plaintiff began working as a financial advisor at Wells Fargo in March of 2011, and was employed with the Company until he resigned and voluntarily terminated his employment on June 5, 2013. (*Id.*, ¶¶ 5, 13; *see also*, Compl., Dkt. No. 1, at ¶¶ 9, 23). In connection with his application for employment at Wells Fargo, and his eventual employment with the Company, Plaintiff executed four separate agreements, each containing a mandatory arbitration clause requiring the parties in this litigation to arbitrate all disputes arising between them before FINRA's office of dispute resolution.

---

[1] Kevin Dailey is a Regional Brokerage Manager at Wells Fargo, and is personally familiar with Todd Zaeske, the Plaintiff in this case. (*Id.*, ¶¶ 3-7). More specifically, Mr. Dailey was responsible for hiring the Plaintiff, and served as his manager from the start of his employment until January of 2012. (*Id.*). Importantly, Mr. Dailey oversaw Mr. Zaeske's orientation and "on-boarding" as a new employee at Wells Fargo, and is personally familiar with – and countersigned – the contracts that Plaintiff executed which compel arbitration of all disputes asserted in this lawsuit. (*Id.*).

### A. PLAINTIFF'S "FORM U4"

First, Plaintiff executed a "Form U4" Uniform Application for Securities Industry Registration or Transfer on March 10, 2011. (Dailey Decl. at ¶ 9 and Ex. B).[2] As a registered representative, Plaintiff was required to sign and submit a Form U4 in order to transfer his FINRA registration from his then-current employer (Chase Investment Services Corp.) to Wells Fargo. (*Id.*). Plaintiff's Form U4 contains a mandatory arbitration clause that requires him to "arbitrate any dispute, claim or controversy that may arise" between him and Wells Fargo if that dispute "is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4" of the Form U4. (*Id.* at Ex. B, p. 13, § 15A, ¶ 5).

The SROs – or "Self-Regulatory Organizations" – for which Plaintiff sought registration through his Form U4 were FINRA, the NYSE and NASDAQ (NQX). (*Id.* at Ex. B, p. 2, § 4). As explained more fully below, Rule 13200(a) of the FINRA Code of Arbitration Procedure for Industry Disputes (the "Code") mandates that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member…and is between or among…members and associated persons." (*infra*, pp. 9, 14-15). In this case, Plaintiff is an "associated person" and Wells Fargo is a "member" as those terms are defined by the Code. (*Id.*). By his Form U4, then, Plaintiff agreed that all claims asserted against Wells Fargo must be arbitrated before FINRA.

### B. PLAINTIFF'S "OFFER SUMMARY" AGREEMENT

Second, Plaintiff accepted the terms and conditions of his employment at Wells Fargo by executing an "Offer Summary" agreement on March 10, 2011, which Mr. Dailey countersigned that same day. (Dailey Decl. at ¶ 10 and Ex. C).[3] The Offer Summary agreement set forth the

---

[2] A copy of Plaintiff's Form U4 is attached to Mr. Dailey's Declaration as "Exhibit B."

[3] A copy of Plaintiff's Offer Summary agreement is attached to Mr. Dailey's Declaration as "Exhibit C."

terms and conditions of Plaintiff's employment at Wells Fargo, and includes a mandatory arbitration covenant. (*Id.* at Ex. C, p. 5, ¶ 12). More specifically, the parties' Offer Summary agreement expressly states that "any action instituted as a result of any controversy arising out of…[Plaintiff's] employment or termination of [his] employment, shall be brought before the arbitration facility of the Financial Industry Regulatory Authority to the exclusion of all others." (*Id.*). By executing the Offer Summary agreement, the parties agreed that "arbitration shall be the parties' exclusive remedy and that the results of such arbitration shall be final and binding upon them." (*Id.*). Thus, the Offer Summary agreement mandates that all claims asserted by Plaintiff in this lawsuit must be arbitrated before FINRA.

### C. PLAINTIFF'S CONFIDENTIALITY AGREEMENT

Third, as a condition of his employment with Wells Fargo, Plaintiff also signed a Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions (the "Confidentiality Agreement") on March 10, 2011. (Dailey Decl. at ¶ 11 and Ex. D).[4] The Confidentiality Agreement also contains a mandatory arbitration covenant, pursuant to which Plaintiff expressly acknowledged that "my U-4 requires any dispute between myself and the Firm…arising out of this Agreement or my employment or termination of employment with the Firm, to be submitted to binding arbitration pursuant to the FINRA Code of Arbitration Procedure." (*Id.* at Ex. D, p. 3, § VIII).

### D. PLAINTIFF'S PROMISSORY NOTE – AND THE PENDING FINRA ARBITRATION

Finally, in connection with his employment at Wells Fargo and his receipt of the Transitional Bonus identified in Section 5 of his Offer Summary Agreement, Plaintiff executed a

---

[4] A copy of Plaintiff's Confidentiality Agreement is attached to Mr. Dailey's Declaration as "Exhibit D."

Promissory Note. (Dailey Decl. at ¶ 12 and Ex. E).[5] Under his Promissory Note, Plaintiff promised to repay to Wells Fargo the sum of $272,311 in 88 equal monthly installments. (*Id.*; *see also*, Compl., Dkt. No. 1, at ¶¶ 6, 11, 22). Plaintiff's Promissory Note also contains a mandatory arbitration clause requiring him to arbitrate "any controversy arising out of this Note…before the arbitration facility of the Financial Industry Regulatory Authority to the exclusion of all others." (Dailey Decl. at Ex. E, p. 2).

Plaintiff resigned and voluntarily terminated his employment with the Company on June 5, 2013. (Dailey Decl., ¶ 13; *see also*, Compl., Dkt. No. 1, at ¶ 23). At the time of Plaintiff's resignation – which constituted an "Event of Default" under his Promissory Note – the unpaid principal balance due and owing from him was more than $246,000; consequently, Wells Fargo filed an arbitration action against Plaintiff to collect on its Promissory Note on November 22, 2013. (Dailey Decl., ¶ 14 and at Ex. F).[6] That arbitration action is currently pending before FINRA, and is an ongoing proceeding. (Dailey Decl., ¶ 15).

Moreover, the Plaintiff is ***actively participating*** in that FINRA arbitration proceeding, and recently filed a motion seeking an extension of time to file his response to the Statement of Claim. On March 26, 2014, Plaintiff's lawyer in this lawsuit petitioned the FINRA arbitration panel for an extension of time to respond to Wells Fargo's Statement of Claim. (A true and correct copy of Plaintiff's petition is attached hereto as Exhibit 2). In that same petition, however, Plaintiff's lawyer states that her client's intention is to ***not arbitrate*** the parties' dispute; instead, Plaintiff desires to somehow consolidate "all claims pertaining to one situation

---

[5] A copy of Plaintiff's Promissory Note in favor of Wells Fargo, dated March 14, 2011, is attached to Mr. Dailey's Declaration as "Exhibit E."

[6] A copy of Wells Fargo's Statement of Claim in Arbitration (without exhibits, which are duplicative) is attached to Mr. Dailey's Declaration as "Exhibit F."

5

with a complete *in federal court*." (Ex. 2). Wells Fargo has opposed Plaintiff's request in the FINRA arbitration proceeding.

### III. LEGAL STANDARD

The FAA requires this Court to stay these proceedings and compel the Plaintiff to arbitrate his grievances with Wells Fargo before FINRA's office of dispute resolution. More specifically, Section 3 of the Act provides in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

(9 U.S.C. § 3).

In turn, Section 4 of the Act provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, should have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

(9 U.S.C. § 4).

The FAA provides a strong presumption in favor of arbitration, and the Act mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2). The Act therefore reflects "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), intended to "ensure judicial enforcement of privately made agreements to arbitrate."*Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219 (1985).

6

Under the Act, "arbitration is favored unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Skipper Marine Holding Inc. v. Azimut Benetti S.p.A.,* No. 12-CV-1274, 2013 WL 1414950 at *2 (E.D. Wisc. April 4, 2013) (*citing Gore v. Alltel Communications, LLC,* 666 F.3d 1027, 1032-1033 (7th Cir. 2012). "Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.*, *citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Miller v. Flume,* 139 F.3d 1120, 1136 (7th Cir. 1998). The question of arbitrability is itself arbitrable where – as here – the parties have clearly and unmistakably so provided in their agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

A motion to compel arbitration should be granted upon a showing of a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218. Thus, where parties have entered into an arbitration agreement and the asserted claims in a lawsuit fall within that agreement's scope, a motion to compel arbitration ***must*** be granted. 9 U.S.C. §§ 3-4. *See also, 1-800-Radiator of Wisconsin, LLC v. 1-800-Radiator Franchise*, No. 08-C-362, 2008 WL 2782894 at *2 (E.D. Wisc. July 15, 2008), *citing Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). "[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516

F.3d 557, 561 (7th Cir. 2008).[7]

This Court recognizes that "[t]he standard for demonstrating arbitrability is not high. The court's only role when presented with a question of arbitrability is to determine (1) whether a valid arbitration agreement exists and (2) whether the scope of the parties' dispute falls within that agreement." *Tickanen v. Harris & Harris, Ltd.,* 461 F.Supp.2d 863, 866 (E.D. Wisc. 2006), quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000).

Importantly, it is the **Plaintiff** who bears the burden of establishing why the arbitration clauses at issue in this case should **not** be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 93-94 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991), and *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 225-26 (1987)); *see also, Tickanen v. Harris & Harris, Ltd.,* 461 F.Supp.2d. 863, 870 (E.D. Wisc. 2006). Indeed, this Court has held that, "[a] party objecting to having a particular dispute referred to arbitration shoulders a heavy burden of proving to this court with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Tupper v. Bally Total Fitness Holding Corp.,* 186 F.Supp.2d 981, 992 (E.D. Wisc. 2002) (quotations omitted).

The Plaintiff in this case does not, and cannot, meet this heavy burden. There is no question that he executed contracts containing mandatory arbitration covenants that require him to arbitrate his disputes with Wells Fargo, and FINRA is the only forum for his claims. Plaintiff's complaint should therefore be dismissed under Rule 12(b)(3).

---

[7] *But see, Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 606-07 (7th Cir. 2003) ("A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss."); *Automobile Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) ("Arbitration clauses, the Supreme Court has held, are a species of forum selection clause.")(citations omitted). Accordingly, Wells Fargo has moved to either dismiss Plaintiff's complaint pursuant to Rule 12(b)(3), or in the alternative to compel arbitration and stay this lawsuit until the pending FINRA arbitration proceeding is fully resolved.

In the alternative, Wells Fargo has shown **_all_** elements necessary to compel arbitration: (a) multiple written agreements to arbitrate; (b) a dispute within the scope of those arbitration agreements; and (c) a refusal by Plaintiff to arbitrate that dispute. *See, Watts Indus., Inc.*, 417 F.3d at 687. Applying the legal standards to the undisputed facts yields only two possible results: either Plaintiff's complaint must be dismissed under Rule 12(b)(3), or this lawsuit must be stayed until the parties have completed their pending arbitration action before FINRA.

### IV. ARGUMENT

#### A. PLAINTIFF EXPRESSLY AGREED TO ARBITRATE DISPUTES SUCH AS THIS

The existence of a written arbitration agreement between Plaintiff and Wells Fargo is beyond dispute. Indeed, Plaintiff signed no fewer than **_four_** agreements – including, but not limited to, his Form U4 – pursuant to which he agreed to arbitrate any disputes arising from his employment relationship with Wells Fargo. More specifically, the Form U4 that Plaintiff and Wells Fargo signed on March 10, 2011 contains the following covenant:

> ***I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm,*** *or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the* ***SROs*** *indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.*

(Dailey Decl. at Ex. B, p. 13, § 15A, ¶ 5) (emphasis added).

For purposes of this lawsuit, the relevant SRO identified in Section 4 of Plaintiff's Form U4 is "FINRA." (*Id.*, at p. 2, § 4). Thus, as part of his application and employment at Wells Fargo, Plaintiff expressly agreed – through his Form U4 – to follow FINRA's Rules, and arbitrate any dispute that is required to be arbitrated under those Rules.

In this case, the FINRA Rules unequivocally mandate that Plaintiff's dispute with Wells Fargo must be arbitrated. FINRA Rule 13200(a) states that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of ***a member* or an *associated person*** and is between or among: members; members and associated persons; or associated persons." (emphasis added). As a registered broker-dealer, Wells Fargo falls within the definition of a "member" under FINRA Rule 13100(o). *See also, Osborne v. Wells Fargo Advisors, LLC*, No. 2:11-cv-691-Ftm-DNF, 2012 WL 2952533, *3 (M.D. Fla. July 19, 2012). And as a registered representative, Plaintiff falls within the definition of an "associated person" under FINRA Rules 13100(a) and 13100(r). *Id.* Thus, in accordance with his written Form U4, Plaintiff agreed that he must arbitrate ***any dispute*** that arises out of Wells Fargo's business activities.

In *Press v. Raether*, 227 F.Supp.2d 1022 (E.D. Wisc. 2002), this Court – when considering a Form U4 that contained an identical arbitration clause as the one at issue here – held that customers' claims against the president and part-owner of a securities brokerage firm were arbitrable as a matter of law. *Press*, 227 F.Supp.2d at 1033. Furthermore, both the Seventh Circuit and the United States Supreme Court have held that arbitration agreements contained within Forms U4 are enforceable and have compelled the arbitration of covered disputes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 n.2 (1991); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir. 1999). There can be no dispute that, standing alone, Plaintiff's Form U4 – which is the same Form U4 that ***all*** associated persons must sign – constitutes a written agreement to arbitrate this dispute before FINRA.

Quite apart from his Form U4, however, Plaintiff signed three (3) other agreements that expressly require any disputes arising from his employment with Wells Fargo to be arbitrated. Plaintiff's Offer Summary agreement contains the following mandatory arbitration clause:

> <u>Arbitration; Choice of Law</u>.  You agree that ***any action*** instituted as a result of any controversy ***arising out of*** this Offer Summary and/or the interpretation thereof, or ***your employment*** or termination of your employment, shall be brought before the arbitration facility of the Financial Authority [sic] Regulatory Authority to the exclusion of all others, unless the rules and/or the codes of the FINRA provide otherwise.  Both you and Wells Fargo Advisors agree that the arbitration shall be the parties' exclusive remedy and that the results of such arbitration shall be final and binding upon them.  Judgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction….  ***Any controversy relating to your duty to arbitrate hereunder, or to the validity or enforceability of this arbitration clause, or to any defense to arbitration, shall also be arbitrated before the FINRA.***  In the event you violate any part of this paragraph, you agree to pay all attorneys' fees and expenses incurred by Wells Fargo Advisors to enforce its rights hereunder.
>
> (Dailey Decl. at Ex. C, p. 5 at ¶ 12) (emphasis added).

Plaintiff's Promissory Note contains a similar mandatory arbitration covenant:

> <u>Arbitration Clause</u>:  Wells Fargo and you agree that any action instituted as a result of any controversy arising out of this Note, or as a result of any section interpretation thereof, shall be brought before the arbitration facility of the Financial Authority [sic] Regulatory Authority to the exclusion of all others.  You agree that arbitration shall be your exclusive remedy and that the results of such arbitration shall be final and binding upon you.  Judgment upon any award render by an arbitration panel may be entered in any state or federal court of competent jurisdiction.
>
> (Dailey Decl. at Ex. E, p. 2).

Finally, Plaintiff's Confidentiality Agreement contains its own mandatory arbitration clause:

> If I am an employee whose registration (Series 7, 63, 9, 10, etc.) is held by the Firm, ***I understand that*** my U-4 requires ***any dispute between myself and the Firm*** and/or any of its affiliates, officers, directors, employees, or managers ***arising out of*** this agreement or ***my employment*** or termination from employment

11

with the Firm to be submitted to binding arbitration pursuant to the FINRA Code
of Arbitration Procedure.

(Dailey Decl. at Ex. D, § VIII) (emphasis added).

Thus, multiple written arbitration agreements exist in this case. It is also plain that Plaintiff's grievances against Wells Fargo fall within the scope of these arbitration agreements.

### B. PLAINTIFF'S LAWSUIT FALLS SQUARELY WITHIN THE ARBITRATION AGREEMENTS

All of the claims that Plaintiff attempts to assert in his Complaint either "relate to" or "arise out of" his Promissory Note, his employment with Wells Fargo, or the Company's business activities.[8] Consequently, those claims can only be asserted – if at all – in an arbitration proceeding before FINRA.

In Count I of his Complaint, Plaintiff attempts to assert a claim for "promissory estoppel" to prevent Wells Fargo from collecting the unpaid balance of his Promissory Note. (Compl., Dkt. No. 1, ¶¶ 25-27). That claim clearly arises out of and relates to his Promissory Note, and must therefore be arbitrated before FINRA. (Dailey Decl. at Ex. E, p. 2).

In Counts II-IV of his Complaint, Plaintiff tries to assert claims for "breach of implied contract," "misrepresentation" and "false advertising" concerning promises that were purportedly made by Wells Fargo concerning his employment with the Company. (Compl., Dkt. No. 1, ¶¶ 28-36). Those claims unequivocally "arise out of" and "relate to" Plaintiff's employment with Wells Fargo, and are subject to the mandatory arbitration covenants in his Offer Summary agreement and Confidentiality Agreement. (Dailey Decl. at Ex. C, p. 5, ¶ 12, and Ex. D § VIII).

---

[8] In truth, Plaintiff's Complaint fails to state any viable cause of action. If Plaintiff was permitted to pursue his claims in court, as opposed to FINRA arbitration – and, he cannot – then his Complaint would be dismissed under Rule 12(b)(6). At no point does Plaintiff even come close to pleading sufficient facts that would establish a viable cause of action against Wells Fargo, or otherwise satisfy the pleading requirements under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

12

Courts that have considered this question have held that where a plaintiff's allegations and potential causes of action arise from his employment as a FINRA-registered employee, "[t]hese are the types of claims contemplated by the arbitration provision in the plaintiff's U4 and FINRA's rules." *Blackwell v. Bank of America Corp.*, No. 7:11-2475-JMC-KFM, 2012 WL 1229673, *2 (D.S.C. March 22, 2012). *See also, Feller v. Wells Fargo Advisors, LLC*, No. 6:11-cv-345-Orl-28GJK, 2011 WL 3331265, *1-3 (M.D. Fla. Aug. 3, 2011) (finding that arbitration clauses contained in an employee's Form U4, offer summary, and promissory note required the employee to arbitrate her claim for fraud in the inducement against Wells Fargo); *Osborne v. Wells Fargo Advisors, LLC*, No. 2:11-cv-691-Ftm-DNF, 2012 WL 2952533, *2 (M.D. Fla. July 19, 2012) (citing cases and noting that the Form U4 unambiguously subjects employment disputes to arbitration). *Cf. Marciano v. MONY Life Ins. Co.*, 470 F.Supp. 2d 518, 526 n.12 (E.D. Pa. 2007) ("The securities industry is heavily-regulated, the parties operating in the industry are particularly sophisticated, and arbitration is widely accepted and is the almost-exclusive means of dispute resolution among and between actors in the industry. Arbitration agreements in the securities industry are almost *sui generis*.").

It is beyond rational debate that Plaintiff's claims "arise out of" his employment with Wells Fargo so as to fall within the scope of these arbitration clauses. Arbitration provisions utilizing the "arising out of" language – such as the agreements at issue here – have been described by courts in the Seventh Circuit as "extremely broad and capable of extensive reach." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *Press, supra*, 227 F. Supp.2d at 1032. Broad arbitration clauses that contain such "arising out of" language "necessarily create a presumption of arbitrability." *Kiefer*, 174 F.3d at 910. Moreover, both this Court and the Seventh Circuit have held that the standard arbitration clause using the phrase

"arising out of" a contract is "admittedly expansive," and encompasses "all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts." *Welborn Clinic v. MedQuist, Inc.,* 301 F.3d 634, 639 (7th Cir. 2002); *Slinger Manufacturing Co., Inc. v. Nemack, S.A.,* No. 08 C 656 2008 WL 4425889 at *3 (E.D.Wisc. Sept. 24, 2008). Plaintiff's claims against the Company clearly arise out of his employment, and therefore fall within the broad reach of the arbitration agreements at issue here.

### C. FINRA RULES REQUIRE THE ARBITRATION OF DISPUTES SUCH AS THIS

Even if Plaintiff were to take the position that the claims he attempts to assert in his Complaint do not "arise out of" or "relate to" his employment at Wells Fargo, but rather concern promises made by the Company prior to his employment, his Form U4 would still require those claims to be arbitrated under FINRA Rules. The FINRA Code mandates that **all disputes** between "members" (such as Wells Fargo) and "associated persons" (such as Plaintiff) **must be arbitrated before FINRA** if those disputes arise out of the business activities of a member. *See* FINRA Rule 13200(a). *See also Lorbietzki v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 2:11-cv-01585-RLH-PAL, 2011 WL 855354, *3 (D. Nev. March 9, 2011). Wells Fargo is clearly a FINRA member, and Plaintiff is clearly an associated person registered with FINRA. Each and every one of Plaintiff's allegations against Wells Fargo as set forth in his Complaint arise out of, concern and relate to Wells Fargo's business activities. As such, his claims must be arbitrated before FINRA.

Courts that have considered the issue have concluded that allegations relating to the hiring, employment, and termination of an "associated person" arise from a member firm's business activities and therefore implicate FINRA Rule 13200(a). *See, e.g., Lorbietzki*, 2011 WL 855354 at *4. *See also Osborne*, 2012 WL 2952533 at *3-4 (disputes arising out of an

associated person's employment relationship with a member implicate FINRA Rule 13200(a)). Because Plaintiff's alleged claims arise out of Wells Fargo's business activities, FINRA Rules compel Plaintiff to submit his claims to arbitration – regardless of whether he agreed in writing to do so (and he did, **four** separate times). This action must therefore be stayed, and Wells Fargo's Motion should be granted.

### D. PLAINTIFF HAS REFUSED TO ARBITRATE

Finally, Plaintiff has obviously refused to arbitrate his claims against Wells Fargo by filing the instant lawsuit. *See, e.g., Armbrister v. Pushpin Holdings, LLC*, 896 F.Supp. 2d 746, 753-54 (N.D. Ill. 2012) (recognizing that the non-moving party's commencement of litigation evidences a refusal to arbitrate). Although Plaintiff has participated in the pending FINRA arbitration action – by untimely seeking leave to respond to the Statement of Claim – he has unequivocally stated **his intention is to not arbitrate**. (Ex. 2). Rather, Plaintiff desires to "consolidate" the pending FINRA arbitration action **in this federal court lawsuit**. (*Id.*).

This Court recognizes that a party's unjustified refusal to arbitrate frustrates the purpose of arbitration. *International Ass'n of Machinists and Aerospace Workers v. Crown Cork & Seal Co.*, No. 11 C 0760 2012 WL 1037652 at *4 (E.D. Wisc. March 27, 2012). "It delays the resolution of the arbitrable dispute and increases the parties' costs for resolving the dispute by requiring them to pay costs for both litigation and arbitration. Courts have therefore not hesitated to award attorneys' fees in cases involving a failure to comply with arbitration awards or refusals to arbitrate." *Id. (citing Dreis & Krump v. Machinists District No. 8,* 802 F.2d 247, 255 7th Cir. 1986). Fees may be awarded when the party refusing to honor the arbitration agreement realized that its position was baseless; bad faith is not required. *Id.*

An award of fees is especially appropriate in this case, because Plaintiff expressly agreed in his Offer Summary agreement that he would reimburse Wells Fargo for all of its costs and attorneys' fees in this case: "In the event you violate any part of this [arbitration clause], you agree to pay all attorneys' fees and expenses incurred by Wells Fargo Advisors to enforce its rights hereunder." (Dailey Decl. at Ex. C, p. 5, ¶ 12). Plaintiff violated the terms of the Offer Summary's arbitration clause by filing his complaint, and he is now liable for Wells Fargo's attorneys' fees and expenses incurred in connection with this entire lawsuit. The Company is currently seeking reimbursement of those fees and expenses from Plaintiff in the pending FINRA arbitration proceeding. (Dailey Decl. at Ex. F).

## V. CONCLUSION

The agreements at issue here – including, but not limited to, Plaintiff's Form U4 – are routinely used throughout the financial services industry, and are unquestionably enforceable. All of Plaintiff's claims in this lawsuit arise out of his employment relationship with Wells Fargo and/or the business activities of the Company, and therefore fall squarely within the scope of the arbitration agreements at issue. Pursuant to the FAA, this lawsuit must be dismissed or stayed, and Plaintiff must be compelled to arbitrate all claims asserted in his Complaint. Accordingly, Defendant Wells Fargo Advisors, LLC respectfully requests that this Court enter an Order:

A. Dismissing Plaintiff's complaint, with prejudice, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure; or, in the alternative:

   1. Compelling Plaintiff to arbitrate all disputes between him on the one hand, and Defendant on the other hand, before FINRA's Office of Dispute Resolution in accordance with the mandatory arbitration provisions in the agreements executed by each of them, from which all claims in this lawsuit arise; and

   2. Staying this proceeding and enjoining Plaintiff from further prosecuting his claims in this lawsuit until a Final Award has been entered on those claims by a Panel of FINRA Arbitrators; and

B. Awarding to Defendant any such other and further relief (including, without limitation, reimbursement of Defendant's actual costs and attorneys' fees incurred in this lawsuit), as the Court deems just, reasonable and consistent with Defendant's arbitration rights and the jurisdictional and venue confines of this Court.

Dated: April 4, 2014

Respectfully submitted,

**WELLS FARGO ADVISORS, LLC**

By: */s/ David O. Krier*

David O. Krier (State Bar No. 1059033)
REINHART BOERNER VAN DEUREN S.C.
1000 North Water Street, Suite 1700
Milwaukee, Wisconsin 53202
Bus: (414) 298-8747
Fax: (414) 298-8097
dkrier@reinhartlaw.com

- and -

Christopher S. Griesmeyer (*Application Pending*)
GREIMAN, ROME & GRIESMEYER, LLC
200 West Madison, Suite 755
Chicago, Illinois 60606
Bus: (312) 428-2741
Fax: (312) 332-2781
cgriesmeyer@grglegal.com

17